## COUNTY COURT.

GEORGE I. R. LEWIS, respondent agt. HEZEKIAH A. RAN-
DALL, appellant.

It was the intention of congress to require a *stamp* to be affixed to the process by
which a suit is removed from a justice's court to a court of record. And such
process includes a *notice of appeal*.

But congress has no authority, to deprive the court of jurisdiction by declaring
the notice of appeal *void* for want of a stamp.

*Chenango County, February,* 1866.

THIS was an action commenced in a justice's court and
appealed to the county court. Motion by the respondent
to dismiss the appeal, on the ground that the notice of
appeal was not stamped pursuant to the act of congress.

C. L. TEFFT, *attorney for respondent.*
L. BUNDY, *attorney for appellant.*

H. G. PRINDLE, County Judge. The portion of the act
of congress relating to this question, is as follows: " Writs
or other process, on appeals from justice's courts or other
courts of inferior jurisdiction to a court of record, fifty
cents." It is quite clear to my mind that it was the inten-
tion of congress to require a stamp to be affixed to the
process by which a suit is removed from a justice's court
to a court of record. Unless such stamp is fixed, the pro-
cess is made void by the act of congress, and if void, the
county court has no jurisdiction of the case.

In the case of *Whiteley* agt. *Leeds,* in the New York com-
mon pleas, the court held that it was necessary that the
notice of appeal should be stamped, and allowed the appel-
lant to affix the stamp in open court, under section 327 of
the Code, which provides as follows : " When a party shall
give in good faith notice of appeal from a judgment or
order, and shall omit through mistake, to do any other act

necessary to perfect the appeal or to stay proceedings, the court may permit an amendment on such terms as may be just."

I think the court in this case did not take a correct view of the law. The above section of the Code was never intended to reach a case of this kind. The Code provides certain steps to be taken in order to perfect an appeal, and if the appellant should bring the appeal in good faith, and by mistake should neglect to do some act necessary to perfect the appeal, the court on being satisfied of the fact, could, under the above section of the Code, allow him to supply the defect. This rule was adopted with special reference to the law then in existence in regard to appeals, and the steps necessary to be taken by the appellant in order to perfect his appeal. It had no reference to the stamp act passed by congress. The Code was adopted years before the stamp act was ever contemplated, and even if the Code had been passed subsequent to the act of congress, the notice of appeal being void could not be made effective by being stamped in open court, unless authorised by the act of congress. The act of congress provides that such process unless duly stamped, is void and of no effect. It is not merely voidable, but absolutely void, and if void, no act of a state court could make it valid.

If congress had the power to declare the process of a state court void for want of a proper stamp, I can see no escape from the conclusion that the appeal must be dismissed, and the only remaining question to be considered is, whether congress has authority to declare the process of a state court void for the want of a proper stamp. In determining this question, the first inquiry arises in regard to our state courts : whether they exist and are entirely independent of congress as regards the question of process and juris-diction. If they are entirely state organizations, and can in no way be legitimately interfered with by congress, then congress can no more interfere with their jurisdiction by

declaring a process void for want of a stamp, than by attempting to determine the form or nature of a process to be issued in order to acquire jurisdiction in a certain case. Congress has no power to legislate on the question unless the same is authorised by the constitution. The powers of congress are delegated by the constitution, and article 10 provides, that " the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." The government of the United States is a derivative one, and can claim no powers which are not granted to it by the constitution, either in express terms or by necessary implication. All powers not delegated to it, or not inhibited to the states, are reserved to them or the people. The powers bestowed by the constitution upon the government of the United States, are limited in their extent. As the state governments retained the right to make all such laws as they might think proper, within the ordinary powers of the legislatures, if not inconsistent with the powers vested exclusively in the federal government, they only look to that instrument for *restrictions* upon, and not for *grants* of legislative authority; whilst the national legislature is dependent entirely upon the provisions of the federal constitution for all the powers which it possesses, and like the government under which it exists, it can exercise no powers except those expressly granted or arising by necessary implication. Among the powers expressly delegated to congress is the right to lay and collect duties, taxes, imposts and excises. I think, however, there are certain limitations and restrictions to the exercise of this right. There is, perhaps, no limitation to the extent of the right so far as the individual members of the government are concerned, but when congress attempts to carry the doctrine to the extent of depriving a state court of jurisdiction, it is quite a different question, and one of much greater magnitude. There is a palpable distinction between

the powers of congress and those possessed by the legislatures of the respective states. The legislatures of the respective states, independent of any constitutional restriction, are undoubtedly vested with unlimited powers of legislation. The decisions of the English courts, of questions arising under their stamp act, have little weight as precedents in determining the question in this case, as the legislative powers of the government are not restricted by the constitution in this respect.

Judge Story, in his commentaries on the constitution, in speaking of the rules by which that instrument should be interpreted, among other things, says : " One important rule in the interpretation of the constitution is, not to enlarge the construction of a given power beyond the fair scope of its terms, merely because the restriction is inconvenient, impolitic, or even mischievous. It should never be lost sight of that the government of the United States is one of limited and enumerated powers, and that a departure from the true import and sense of its powers is *pro tanto* the establishment of a new constitution. To the general government are assigned all those powers which relate to the common interests of all the states as comprising one confederated nation, while to each state is reserved all those powers which may affect or promote its own domestic interests, its peace, its prosperity, its policy *and its local institutions*."

Within the above rule let us again advert to some of the provisions contained in the constitution. The first subdivision of section 8, article 1, of the constitution, before alluded to, provides that congress shall have power to " lay and collect taxes, duties, imposts and excises." Subdivision 17 of the same section, provides that congress shall have power " to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or

officer thereof." It is quite clear that the first subdivision quoted confers no authority to make the process of a state court void. Laying and collecting taxes is one thing, and declaring process void, another. If congress possessed the power to pass the statute in question, that power was derived from the latter subdvision quoted. But can it be said to be necessary and proper that congress should interfere with the jurisdiction of a state court in order to "lay and collect taxes, duties, imposts and excises?" I think not. Congress has abundant power to lay taxes and collect taxes, and raise sufficient money for all governmental purposes, without laying its hands upon the machinery of state governments. It has power to tax the people in their capacity of citizens of the United States, all that they are able to bear, and all that the necessities of the government demand. Indeed, the whole property of the people can be taken away by the levy of direct taxes, and by taxing their products and their transactions with one another as citizens. Wherefore then the necessity for congress to invade the department of state authority in the levy and collection of taxes? It could not have been contemplated by the framers of the constitution that the general government should possess this authority. That instrument was framed clearly and unmistakably upon the theory that state governments should co-exist with the general government, each sovereign and independent in their legitimate sphere of governmental action: that states should not interfere with the functions of the general government, and that the general government should not interfere with the functions of the respective states.

If a statute of the United States is allowed to block the wheels of state government, the harmony and beauty of our system is destroyed, and the departments of state and national authority are so intermingled as to result in interminable confusion and uncertainty. If congress can declare void the notice of appeal by which a cause is removed from

one state court to another, unless a certain stamp is affixed thereto, it can upon the same principle, and to the same extent, interfere with every process and proceeding from the commencement of an action to the satisfaction of the judgment, in every state court from the highest to the lowest. It can lay hold of the executive and legislative departments of state machinery, and compel from them obedience to its power. It can make state laws and constitutions void unless duly stamped, and can compel governors, legislators and all state officers, to place a badge of inferiority in the shape of a United States revenue stamp, upon every official document which they are called upon to issue. If it can make process void unless a fifty cent United States revenue stamp is affixed to it, it can make it void unless a two hundred dollar stamp is affixed, and thus practically wipe out the entire jurisdiction of our inferior courts. Is the possession of such authority on the part of congress consistent with the independent existence of state governments, or the spirit of the constitution, which clearly recognizes such independent existence? If a proposition had been made in the convention by which the constitution was framed, to clothe the United States government with such authority over the institutions of the states, who believes that it would have been adopted? Would the states have ratified such a proposition? If not, the constitution should not now be extended by construction to embrace it. It would be unwarrantably adding to the constitution, rather than construing it. It is equally for the interests of all that the division line of state and national power should remain as defined by the makers of the constitution. The people are interested in the preservation of both state and national government, and it is the duty of those who are called upon to pass upon the validity of statutes, to see to it that the one does not invade the domain of the other.

It would hardly be contended that a state could pass a

law interfering in such a manner with the jurisdiction or proceedings of a United States court, but I cannot see why such a law would not be as valid as the one in question. It has been with considerable hesitation that I have attempted to discuss the constitutional question involved in this case. I have held the question open for some time in the expectation that some of the higher tribunals of our state would decide it. The question having been raised in this case, it is as much my duty to determine it so far as this tribunal is concerned, as to determine any question that might be raised in regard to the construction of a law of the state. Judge Kent lays down the rule that "the interpretation or construction of the constitution, is as much a judicial act, and requires the exercise of the same legal discretion, as the interpretation or construction of a law. To contend that the courts of justice must obey the requisitions of an act of the legislature, when it appears to them to have been passed in violation of the constitution, would be to contend that the law was superior to the constitution, and that the judges had no right to look into it and regard it as the paramount law."

. The construction I have given to the act of congress is not entirely without precedent. The supreme court of Indiana, in the case of *Warner* agt. *Paul* (*reported* 4 *Am. Law Register*, 157), in a well considered opinion, held substantially the same doctrine; and in *Walton* agt. *Bryenth* (24 *How. Pr. Rep.* 357), Justice BARNARD held the same, although he did not discuss the question. The appellant having complied with all the requirements of the Code in bringing his appeal, I am of the opinion that congress had no authority to deprive the court of jurisdiction by declaring the notice of appeal void for want of a stamp.

The motion is therefore denied, but the question is of such a nature that I think it should be denied without costs.